<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

```
_____
                               :
ANTHONY PARKER,                :
                               :      Civil Action No.
               Plaintiff,      :      10-2070 (JBS)
                               :
          v.                   :      O P I N I O N
                               :
GATEWAY NU-WAY                 :
FOUNDATION et al.,             :
                               :
               Defendants.     :
_____:
```

<u>**Simandle**</u>, District Judge:

    Plaintiff Anthony Parker ("Plaintiff"), an inmate confined at South Woods State Prison ("South Woods"), Bridgeton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, pursuant to 28 U.S.C. § 1915(a), and order the Clerk to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   **BACKGROUND**

   A.   **Procedural Background**

   This matter was initiated upon the Clerk's receipt of Plaintiff's original civil complaint.   See Docket Entry No. 1. Since Plaintiff's original complaint arrived unaccompanied by either Plaintiff's in forma pauperis application or by prepayments of his filing fee, see id., this Court issued an order denying Plaintiff in forma pauperis status without prejudice and directing Plaintiff to either prepay his filing fee or submit his in forma pauperis application within thirty days from the date of issuance of the Court's order.   See Docket Entry No. 2.   In addition, since Plaintiff's original complaint consisted of statements preventing the Court's understanding of the identity of the defendant(s) and plaintiff(s), the nature of violation Plaintiff was aiming to assert and the remedy Plaintiff was seeking, see id. at 1-2 and 4-5, nn.1 and 2, the Court directed Plaintiff to submit an amended complaint curing the aforesaid deficiencies.   See id. at 4.   The Clerk was directed to provide Plaintiff with a blank civil complaint form to assist Plaintiff in that endeavor.   See id. at 5.

   In response, Plaintiff duly submitted his in forma pauperis application and his amended complaint executed in a fashion roughly corresponding to a blank civil complaint form.   See Docket Entries Nos. 3 and 4.   The latter arrived accompanied by a document titled "Request for Production of Documents," see Docket Entry No. 4-1,

and was followed by Plaintiff's submission of an application for appointment of <u>pro</u> <u>bono</u> counsel.  <u>See</u> Docket Entry No. 5.

Two weeks later, the Clerk received a letter from Plaintiff indicating Plaintiff's impression that the Court's initial order entered in this matter (<u>i.e.</u>, the order denying Plaintiff <u>in</u> <u>forma</u> <u>pauperis</u> status without prejudice) resulted in dismissal of this action with prejudice because certain Plaintiff's filings "were not timely received by [this] Court."[1]  Docket Entry No. 6.

B.   **Substantive Background**

1.   **Allegations as to Particular Defendants**

In his amended complaint ("Complaint"), Plaintiff named the following persons and entities as Defendants: (a) Gateway Foundation; (b) Grace Cookewaters ("Cookewater," who, allegedly, is a Technical Supervisor of Gateway Foundation program administered at the South Woods); (c) State of New Jersey; (d) Department of Corrections (presumably, for the State of New Jersey); (e) Karen Balicki ("Baliki," in her capacity as the warden of the South Woods); and (f) unspecified "John/Jane Does."  <u>See</u> Docket Entry No. 4, at 1.  Plaintiff seeks $100,000 in damages.  <u>See</u> <u>id.</u> at 5.

The Complaint clarified the involvement of the aforesaid Defendants in the wrong allegedly suffered by Plaintiff as follows:

---

[1]   Plaintiff errs.  <u>See</u> Docket Entry No. 2.  This matter was neither terminated with prejudice nor dismissed for Plaintiff's failure to submit any document timely.  <u>See</u> <u>id.</u>  Indeed, Plaintiff's submissions of his <u>in</u> <u>forma</u> <u>pauperis</u> application and his amended complaint were well within the period allotted by the Court, without requiring the Court to even factor in the "prison mail-box" rule.

(a)   With regard to the Gateway Foundation, Plaintiff outlined the services provided by this organization to inmates in some prisons, one of which appears to be South Woods State Prison. The Complaint does not state any fact indicating that the Gateway Foundation, as a juridical entity, was personally involved in any events complained about by Plaintiff. Rather, in no ambiguous terms, Plaintiff indicates his opinion that the Gateway Foundation is liable because it is the employer of Cookewater and other unspecified individuals. See id. at 2.

(b)   With regard to Cookewater, Plaintiff asserts that she violated Plaintiff's rights by: (i) informing Plaintiff that he had to complete a certain prerequisite sub-program in order to complete a certain umbrella program administered by the Gateway Foundation;[2] and (ii) by requesting the South Woods officials to remove Plaintiff from that umbrella program upon learning that Plaintiff filed legal grievances and initiated the instant legal matter complaining about the requirement to complete the sub-program. See id.

(c)   With regard to New Jersey Department of Corrections and the South Woods, Plaintiff clarifies that he named these entities as Defendants because, in light of Plaintiff's now-developed non-completion of the aforesaid umbrella program, these entities refused to so reclassify Plaintiff as to qualify him

---

[2]   Plaintiff's allegations to that effect are detailed in the next subsection of this Opinion.

for incarceration at (and, seemingly, transfer to) a minimum security facility, hence preventing Plaintiff from seeking speedier transfer to a community correctional center. See id. at 3.

(d)  Finally, with regard to Balicki, Plaintiff asserts that Balicki is liable to Plaintiff because she complied with the Department of Correction policy preventing re-qualification of inmates for minimum security status in the event these inmates fail to complete the aforesaid umbrella program  See id.

(e)  The Complaint is silent as to any actions undertaken by "John/Jane Does." See generally, Docket Entry No. 4.

### 2.  Substantive Allegations

It appears from Plaintiff's submission that the Gateway Foundation is a charitable organization providing multi-level rehabilitation services to persons suffering of addiction to controlled substances and/or alcohol. See id. at 2.

Plaintiff asserts that he signed a certain agreement with the Gateway Foundation, pursuant to which he got enrolled into the Gateway Foundation's umbrella program (named "Nu-Way") which was administered to the inmates confined at the South Woods, seemingly with the goals of rehabilitating these enrolled inmates and providing them with a certain certificate or status upon their completion of this umbrella program.[3] See id. Plaintiff asserts

---

[3]  It appears that the agreement between Plaintiff and the Gateway Foundation imposed upon Plaintiff (same as upon any other inmate enrolled in the umbrella "Nu-Way" program) certain

5

that, at the time of executing the agreement, he was of opinion that he could choose to participate or decline participation in any (or in certain) "sub-programs" to that umbrella "Nu-Way" program, and that he eventually decided to decline participating in the "Narcotics Anonymous" sub-program. See id. Plaintiff also asserts that, upon his decision to that effect, he was informed by Cookewater that his participation in the "Narcotics Anonymous" sub-program was a necessary pre-requisite to completion of the umbrella "Nu-Way" program. See id. Plaintiff, however, refused concluding that, since that requirement was not expressly stated in his enrollment agreement, the imposition of such requirement had to be a breach of contract which, Plaintiff hypothesized: (a) was executed between the State of New Jersey (and/or Department of Corrections) and the Gateway Foundation; and (b) pursuant to which, the Gateway Foundation had to be obligated to either avail its umbrella "Nu-Way" program to all inmates who signed the behavioral agreement, regardless of whether or not these inmates participated in any particular sub-program(s), or to expressly pre-notify the inmates that they had to participate in the "Narcotics Anonymous" sub-program. See id.; see also Docket Entry No. 4-1 (Plaintiff's request seeking, inter alia, production of "the contract signed and agreed upon by the Gateway Foundation and State of New Jersey[] Department of Corrections"); Docket Entry No. 5 (Plaintiff's

---

behavioral requirements, so a violation of these requirements could disqualify the non-complying inmate from continuing his/her participation in the program. See Docket Entry No. 4, at 2.

request for appointment of pro bono counsel on the grounds of Plaintiff's lack of "familiar[ity] with the serpentine interpretations of [c]ontractual [l]aw, including those between government entities and alleged non-profit organizations, [as well as in light of Plaintiff's lack of familiarity with] how Gateway's contractual partners (the Deferal and State governments) have stipulated policies in handling these issues").

II.   **STANDARD OF REVIEW**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the  complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals

for the Third Circuit provided the courts in this Circuit with
detailed and careful guidance as to what kind of allegations
qualify as pleadings sufficient to pass muster under the Rule 8
standard.  See Phillips v. County of Allegheny, 515 F.3d 224,
230-34 (3d Cir. 2008).  Specifically, the Court of Appeals
observed as follows:

> "While a complaint . . . does not need detailed
> factual allegations, a plaintiff's obligation [is] to
> provide the 'grounds' of his 'entitle[ment] to relief'
> [by stating] more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of
> action . . . ." Twombly, 127 S. Ct. at 1964-65 . . .
> Rule 8 "requires a 'showing,' rather than a blanket
> assertion, of entitlement to relief." Id. at 1965
> n.3. . . . "[T]he threshold requirement of Rule
> 8(a)(2) [is] that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is entitled to
> relief.'" Id. at 1966. [Hence] "factual allegations
> must be enough to raise a right to relief above the
> speculative level." Id. at 1965 & n.3. . . . [Indeed,
> it is not] sufficient to allege mere elements of a
> cause of action; instead "a complaint must allege
> facts suggestive of the proscribed conduct." Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United
States Supreme Court in its recent decision Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . .
> demands more than an unadorned ["]the-defendant-
> unlawfully-harmed-me["] accusation. [Twombly, 550
> U.S.] at 555 . . . . A pleading that offers "labels
> and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at
> 555.  Nor does a complaint suffice if it tenders
> "naked assertion[s]" devoid of "further factual
> enhancement." Id. at 557. . . . A claim has facial
> plausibility [only] when the plaintiff pleads factual
> content . . . . Id. at 556. [Moreover,] the
> plausibility standard . . . asks for more than a sheer

8

possibility that a defendant has acted unlawfully.
Id. [Indeed, even w]here a complaint pleads facts that
are "merely consistent with" a defendant's liability,
[the so-alleging complaint still] "stops short of
[showing] plausibility of 'entitlement to relief.'"
Id. at 557 (brackets omitted). [A fortiori,] the tenet
that a court must accept as true all of the
allegations contained in a complaint is inapplicable
to legal conclusions [or to t]hreadbare recitals of
the elements of a cause of action, supported by mere
conclusory statements [,i.e., by] legal conclusion[s]
couched as a factual allegation [e.g.,] the
plaintiffs' assertion of an unlawful agreement [or]
that [defendants] adopted a policy "'because of,' not
merely 'in spite of,' its adverse effects upon an
identifiable group." . . . . [W]e do not reject these
bald allegations on the ground that they are
unrealistic or nonsensical. . . .  It is the
conclusory nature of [these] allegations, rather than
their extravagantly fanciful nature, that disentitles
them to the presumption of truth. . . . [Finally,] the
question [of sufficiency of] pleadings does not turn .
. . the discovery process.  Twombly, 550 U.S.] at 559
. . . . [The plaintiff] is not entitled to discovery
[where the complaint alleges any of the elements]
"generally," [i.e., as] a conclusory allegation
[since] Rule 8 does not [allow] pleading the bare
elements of [the] cause of action [and] affix[ing] the
label "general allegation" [in hope to develop facts
through discovery].

Iqbal, 129 S. Ct. at 1949-54.

### III. **SECTION 1983 ACTIONS**

A plaintiff may have a cause of action under 42 U.S.C. § 1983
for certain violations of his constitutional rights. Section 1983
provides in relevant part:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory
. . . subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**IV.   DISCUSSION**

**A.   Plaintiff's Contractual Claims Construed Literally**

Plaintiff brings his contract claims as Section 1983 claims. Construed as Section 1983 allegations, Plaintiff's breach of contract claims are subject to dismissal for lack of jurisdiction.

Since § 1983 envisions litigations based on "deprivation[s] of any rights, privileges, or immunities secured by the Constitution," rather than litigations based on alleged violations of state contract law, Plaintiff's breach-of-contract claims do not raise a federal question, which must underlie any Section 1983 action.[4]

However, the Court might retain supplemental jurisdiction over Plaintiff's contractual claim based on state law if the Court factors into its analysis Plaintiff's constitutional allegations (that he was retaliated for complaining about the alleged breach). Indeed, under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state law claims "that are so

---

[4]  If Plaintiff was aiming to assert a state-law breach of contract claim under diversity jurisdiction (instead of federal question jurisdiction), he failed to sufficiently plead facts establishing such jurisdiction.  See Docket Entry No. 4.

related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see also Growth Horizons, Inc. v. Del. County, Pa., 983 F.2d 1277, 1285 (3d Cir.1993). Therefore, the Court will examine Plaintiff's contractual claims on merits and with an eye on exercising supplemental jurisdiction.

### 1. Contract Between the State and Gateway Foundation

The bulk of Plaintiff's challenges focus on the contract which, Plaintiff hypothesizes, was executed between the State of New Jersey (and/or New Jersey Department of Corrections) and the Gateway Foundation. However, even if the Court presumes that Plaintiff is correct in his hypothesis and, for the purposes of this Opinion only, takes as true Plaintiff's conjecture that the Gateway Foundation breached that contract, Plaintiff has no standing to sue for such violation: this is so even if Plaintiff deems or designates himself as a third-party beneficiary of this contract. See Brown v. Sadowski, 2009 U.S. Dist. LEXIS 62718, at *13 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials") (relying on Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)); accord Glenn v. Hayman, 2007 U.S. Dist. LEXIS 20092, at *34 (D.N.J. Mar. 20, 2007) (analogously

11

relying on <u>Anza</u> for the observation that, "[s]ince the State of New Jersey was the allegedly defrauded party (and in no way designated Plaintiffs to litigate the alleged RICO claim on behalf of the State), Plaintiffs cannot bring this claim").

Since this deficiency cannot be cured by Plaintiff's re-pleading of his claims, Plaintiff's allegations based on the Gateway Foundation's hypothetical breach of contract with the State of New Jersey or its Department of Corrections will be dismissed with prejudice.

### 2.   Agreement Between Plaintiff and Gateway Foundation

Although the bulk of Plaintiff's claims focus on the contract between the State of New Jersey/Department of Corrections and Gateway Foundation, Plaintiff's occasional references to the agreement he executed upon enrollment into the umbrella "Nu-Way" program warrant a brief review.

As drafted, Plaintiff's claims based on that agreement are subject to dismissal.  According to the Complaint, it appears that Plaintiff stood to be disqualified from the umbrella "Nu-Way" program had he violated disciplinary requirements imposed by the South Woods (or the Department of Corrections).  <u>See</u> Docket Entry No. 4, at 2.  If so, the agreement fails for lack of consideration on Plaintiff's part (that is, unless the agreement imposed upon Plaintiff the duty of Plaintiff's compliance with certain behavioral limitations *materially different from and additional to* those ensuing from normal requirements imposed on inmates by the

12

South Woods/Department of Corrections). Simply put, Plaintiff's duty to comply with prison requirements was a pre-existing consideration that could not support his agreement with the Gateway Foundation. <u>See</u>, <u>e.g.</u>, Restatement (Second) of Contracts § 73 (1981) (noting general rule that performance of a pre-existing legal duty is not consideration); <u>cf.</u> Restatement (Second) Contracts § 73, cmt. b (public duties cannot form legal consideration). That, in turn, suggests that Plaintiff's claims are facially deficient.

Moreover, even if a valid consideration on the part of Plaintiff could be detected, Plaintiff's claim that he misunderstood the terms of the agreement as being fully merged in the written form he signed[5] merely evinces lack of meeting of minds voiding the agreement rather than vesting Plaintiff with a valid contractual claim. <u>See</u> Docket Entry No. 4, at 2 (defining the agreement as a document lacking merger clause, wholly silent as to the "Narcotics Anonymous" sub-program and, altogether, set forth in broad terms from which Plaintiff merely deduced a generic conclusion that it "allow[ed] inmates to make choices regarding participation [in] certain 'sub-programs'"); <u>accord</u> Restatement (Second) Contracts § 216, cmt. e ("Written agreements often contain

---

[5]  Plaintiff states that *he* signed the agreement, but he omits to state that the agreement was also signed by a duly authorized representative of the Gateway Foundation. If the agreement was not signed by such representative, it cannot be enforced against the Gateway Foundation. However, for the purposes of this Opinion only, the Court presumes that the agreement was signed by such authorized representative.

clauses stating that there are no representations, promises or agreements between the parties except those found in the writing. Such a clause may negate the apparent authority of an agent to vary orally the written terms, and if agreed to is likely to conclude the issue whether the agreement is completely integrated. Consistent additional terms may then be excluded even though their omission would have been natural in the absence of such a clause. But such a clause does not control the question whether the writing was assented to as an integrated agreement, the scope of the writing if completely integrated, or the interpretation of the written terms"); Restatement (Second) Contracts § 217, cmt. b ("Even a 'merger' clause in the writing, explicitly negating oral terms, does not control the question whether there is an integrated agreement or the scope of the writing").

However, and paramount here, even if the Court were to presume that Plaintiff, being a pro se litigant inadvertently omitted stating facts evincing that the agreement was signed by a duly authorized agent of the Gateway Foundation, plus there was a valid consideration on Plaintiff's part and, in addition, the agreement contained a merger clause and the surrounding circumstances were such to exclude any omitted oral terms, Plaintiff's allegations still are facially deficient. This is so because – in order for the Gateway Foundation to breach its agreement with Plaintiff in the fashion Plaintiff complains about – Plaintiff had to be discharged from (or prevented from completion of) the umbrella "Nu-

Way" program actually on the grounds of Plaintiff's failure to participate in the "Narcotics Anonymous" sub-program.  Yet, Plaintiff – in no ambiguous terms – asserts that he was discharged from the umbrella "Nu-Way" program not for his refusal to participate in the "Narcotics Anonymous" sub-program but, rather, for filing disciplinary grievances and initiating this action.  In light of the foregoing, Plaintiff's claims based on his agreement with the Gateway Foundation appear to be facially deficient and will be dismissed.  However, since the Court is mindful of the ambiguity of Plaintiff's claims to that effect, the Court finds it prudent to dismiss these claims without prejudice.

**B.   <u>Contractual Claims Construed as Constitutional Claims</u>**

The foregoing analysis notwithstanding, the Court cannot rule out the possibility that Plaintiff's allegations associated with the Gateway Foundation services and the effect they had on Plaintiff's classification were not intended to operate as contractual claims but rather were intended as constitutional challenges.  Indeed, the Supreme Court's guidance in <u>Twombly</u> merely requires plaintiffs to state sufficient factual grounds for relief, <u>Phillips</u>, 515 F.3d at 233 (quoting <u>Twombly</u>, 127 S. Ct. at 1966), and – for the purpose of distilling a <u>pro</u> <u>se</u> litigant's legal claim – such factual heft must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998).

Here, however, even liberal construction of Plaintiff's claims cannot salvage them.  For instance, if the Court were to construe

15

Plaintiff's allegations as an Eighth Amendment claim asserting denial of medical care in the form of preventing Plaintiff's access to the umbrella "Nu-Way" program, Plaintiff's claims fail since they fail to allege a serious medical need and, decisively here, indicate that Plaintiff refused the "treatment" offered to him (<u>i.e.</u>, a package deal incorporating both the "Narcotics Anonymous" sub-program and the umbrella "Nu-Way" program), demanding an alternative "treatment" (<u>i.e.</u>, only the umbrella "Nu-Way" program). However, denial of the particular "care" that a prisoner desires cannot amount to a constitutional violation. <u>See</u> <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990).

Analogously, denial of transfer to a minimum security facility cannot state a cognizable due process claim because prisoners have no due process liberty interest in being assigned to the correctional institution of their choice. <u>See</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209 (2005); <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976).[6] Therefore, even if construed as constitutional rather than contractual challenges, Plaintiff's allegations based on the Gateway Foundation's "Nu-Way"

---

[6] In the context of the federal prison system, denial of transfer to a community correctional center may give rise to a habeas action, <u>see</u> <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 242 (3d Cir. 2005), but the difference in conditions of confinement between a medium security facility and a minimum security facility (or between a correctional facility and a community correctional center) cannot render the conditions of confinement in the former unconstitutional. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995); <u>Hubbard v. Taylor</u>, 538 F.3d 229 (3d Cir. 2008); <u>Hubbard v. Taylor</u>, 399 F.3d 150 (3d Cir. 2005).

program and denial of transfer to a minimum security facility (and delay in being considered for transfer to a community correctional center) fail to state a claim upon which relief can be granted.

### C.  **Retaliation Claim**

In contrast, Plaintiff's allegations asserting retaliatory discharge from the umbrella "Nu-Way" program shuld survive past the <u>sua</u> <u>sponte</u> dismissal stage.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." <u>White</u>, 897 F.2d at 111-12.  To plead a First Amendment retaliation claim, a plaintiff must allege: (a) constitutionally protected conduct, (b) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (c) a causal link between the constitutionally protected conduct and the retaliatory action.  <u>See</u> <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006); <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001); <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000).  A plaintiff may establish causation by alleging either: (a) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (b) a pattern of antagonism coupled with timing to establish a causal link.  <u>See</u> <u>Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007).

Here, Plaintiff's alleged filing of disciplinary grievances and factually evident initiation of this matter qualify as

17

constitutionally-protected activity, and the retaliatory action (allegedly preventing Plaintiff for qualifying for earlier transfer to a community correctional center) could be deemed as a measure sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Moreover, the temporal proximity between the alleged retaliation and Plaintiff's initiation of this matter appears unusually suggestive. In light of the foregoing, Plaintiff's allegations that he was unduly retaliated do not warrant dismissal at this preliminary juncture.

> **D.** **Proper Defendants for Plaintiff's Retaliation Claim**

The foregoing conclusion, however, begs a determination which Defendants among those named in the Complaint should be directed to answer Plaintiff's retaliation allegations.

It is self-evident that Defendants the State of New Jersey, New Jersey Department of Corrections and the South Woods Prison shall be dismissed as Defendants in this action.[7]

---

[7] The Eleventh Amendment to the United States Constitution provides that, [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." Thus, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332 (1979). Hence, the State of New Jersey and New Jersey Department of

Similarly, claims against Balicki are subject to dismissal. Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 169 (1985), and – in addition – supervising officials cannot be held liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' personal involvement in the alleged wrongs.  See Iqbal, 129 S. Ct. 1937; Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  With the same token, claims against the Gateway Foundation are subject to dismissal because they are based solely on the respondeat superior theory, which is unavailable under Section 1983.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation –- even if it is operation under contract with the state –- cannot be held vicariously liable for the acts of its employees and agents under those theories).

---

Corrections are immune from suit for money damages in federal court pursuant to the Eleventh Amendment.  Moreover, the Department of Corrections is not a "person" subject to liability under § 1983.  Analogously, the South Woods Prison is is not an entity cognizable as "person" for the purposes of a § 1983 suit. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); see also Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).

The foregoing analysis leaves the Court with Plaintiff's claims against Cookewater and John/Jane Does (whom the Court presumes to be the correctional officers who, upon Cookewater's alleged complaint to the South Woods about Plaintiff's filing of grievances and this action, retaliated against Plaintiff by removing him from the umbrella "Nu-Way" program).[8]

While these John/Jane Does, if actually in existence, seemed to be acting under color of law, the Court is not entirely sure as to whether Cookewater was too acting under color of law.[9]  While a person operating under a contract with the state is often deemed to act under color of law, see, e.g., West v. Atkins, 487 U.S. 42, 53-58 (1988) (physician under contract to provide medical services at prison acted under color of state law); see also McCullum v. City of Phila., 1999 U.S. Dist. LEXIS 10423, **6-10 (E.D. Pa. July

---

[8]  The Court notes that it is not clear as to how South Woods officials could remove Plaintiff from the program which, according to the Complaint, was administered solely by the Gateway Foundation and not by the South Woods.

[9]  "The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  For the conduct to be "fairly attributable" to the State: (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State, or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible; and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State.  See id. at 936-39.

20

13, 1999) (private companies who contract with prisons act under color of state law for purposes of § 1983); <u>Morgan-Mapp v. George W. Hill Corr. Facility</u>, 2008 U.S. Dist. LEXIS 69434,**46-47 (E.D. Pa. Sept. 12, 2008) (same), this rule is not uniform. <u>See</u>, <u>e.g.</u>, <u>Moose Lodge No. 107 v. Irvis</u>, 407 U.S. 163 (1972) (a private entity's action does not become state action simply because it receives a benefit or service from the state, or is subject to state regulation); <u>see also</u> <u>Montano v. Hedgepeth</u>, 120 F.3d 844, 849-51 and n.11 (8th Cir. 1997) (discussing <u>Phelps v. Dunn</u>, 965 F.2d 93, 101-02 (6th Cir. 1992), for the observation that a pastor might be deemed state actor only if acts under a contract with the state rather than a volunteering charity); <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981) (a public defender, although paid and ultimately supervised by the state, does not act under color of state law when performing the traditional functions of counsel to a criminal defendant); <u>Dean v. Olibas</u>, 129 F.3d 1001, 1006 n.4 (8th Cir. 1997) (rejecting <u>per se</u> state actor approach to claims against bondsmen); <u>accord</u> <u>Meeker v. Kercher</u>, 782 F.2d 153, 155 (10th Cir. 1986) (extending Polk to situation involving guardian <u>ad litem</u>).

The Court, therefore, will presume without making a factual finding to that effect, that Cookewater was acting under color of law within the meaning of § 1983. when she removed Plaintiff from the umbrella "Nu-Way" program for filing of disciplinary grievances and initiating the instant matter.

**V.     <u>CONCLUSION</u>**

For the foregoing reasons, this docket will be reopened and the Court will grant Plaintiff's application to file the Complaint without prepayment of the filing fee and will direct the Clerk to file the Complaint.

Plaintiff's allegations based on alleged retaliation will proceed past the sua sponte dismissal stage. Plaintiff's contractual claims alleging breach of a hypothetical contract between the State of New Jersey/New Jersey Department of Corrections and the Gateway Foundation will be dismissed, with prejudice, for lack of standing. Plaintiff's claims alleging breach of the agreement between Plaintiff and the Gateway Foundation will be dismissed without prejudice.

Plaintiff's claims based on failure to transfer to a minimum security facility will be dismissed with prejudice for failure to state a claim upon which relief may be granted, while Plaintiff's claims asserting undue delay in consideration for transfer to a community correctional center will likewise be dismissed without prejudice to bringing an appropriate habeas action.

Plaintiff's claims against all Defendants other than Cookewater and John/Jane Does will be dismissed, such dismissal will be with prejudice as to Defendants State of New Jersey, New Jersey Department of Corrections, South Woods State Prison and Warden Balicki.

22

Plaintiff's application for appointment of counsel will be denied, without prejudice, as premature. An appropriate Order accompanies this Opinion.


                                        **s/ Jerome B. Simandle**
                                        JEROME B. SIMANDLE
                                        U.S. District Judge

Dated:     **October 26, 2010**